611 F.2d 673
 Clarence NEVILLE, Petitioner-Appellant,
v.
C. Joseph CAVANAGH, State's Attorney, Sangamon County,
Springfield, Illinois, and George A. Ralston,
Warden, United States Penitentiary,
Terre Haute, Indiana,
Respondents-Appellees.
 No. 79-1188.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 25, 1979.
Decided Dec. 21, 1979.
 
 Carl Ziemba, Detroit, Mich., for petitioner-appellant.
 Orisha Kulick, Asst. Atty. Gen., Crim. Div., Chicago, Ill., for respondents-appellees.
 Before SPRECHER and CUDAHY, Circuit Judges, and VAN DUSEN, Senior Circuit Judge.*
 VAN DUSEN, Senior Circuit Judge.
 
 
 1
 This is an appeal from a denial by the district court of a petition by Clarence E. Neville for a writ of habeas corpus. Neville contends that the indictments outstanding against him in the Sangamon County Circuit Court in the State of Illinois should be dismissed because his rights under the Interstate Agreement on Detainers Act, Ill.Rev.Stat.1975, Ch. 38, § 1003-8-9 (Interstate Agreement),[1] were violated. The district court declined to address the merits of this contention, holding that Neville's petition was premature. Neville also sought injunctive relief prohibiting the State of Illinois from taking custody of him pending the adjudication of his habeas petition. The district court denied this request. We affirm the decision of the district court.
 
 
 2
 Neville, a federal prisoner, entered the federal penitentiary at Terre Haute, Indiana, in 1974 to serve a 10-year sentence. In June 1976 the State's Attorney of Sangamon County, Illinois, filed a detainer against Neville under the Interstate Agreement, based on 28 indictments pending against Neville in the Sangamon County Circuit Court. Neville was transferred to Sangamon County Jail on June 6, 1976. His trial was scheduled for October 25, 1976. One week prior to trial, Neville's privately retained counsel requested a continuance due to counsel's illness. The court granted a continuance until January 1977, with a specific trial date to be selected at a later time. The court also entered an order directing that Neville be returned to federal custody. Neville was transferred back to the federal penitentiary at Terre Haute in October.
 
 
 3
 In January 1977 Neville filed a pre-trial motion to dismiss in Sangamon County Circuit Court, asserting that Article IV(e)[2] of the Interstate Agreement mandated dismissal of his pending indictments. The trial court denied his motion. Neville then filed a petition with the Illinois Supreme Court, seeking permanent prohibition of the trial and dismissal of the indictments with prejudice. In an opinion[3] filed September 20, 1977, the Illinois Supreme Court ruled against Neville on the merits of his claim and denied his petition for a writ of prohibition. Noting that Neville had sought the continuance which resulted in the lengthy trial delay, that the state had been prepared to go to trial, and that Neville had not objected to being returned to Terre Haute, the court held that in these circumstances the Interstate Agreement on Detainers Act does not require dismissal of the charge. Neville sought review in the United States Supreme Court, but certiorari was denied. He then filed a petition for a writ of habeas corpus and an application for a temporary restraining order in the United States District Court for the Southern District of Illinois. The court denied relief on both matters. This appeal followed.
 
 
 4
 While this appeal was pending, Neville was paroled from the federal penitentiary in Indiana. The State of Illinois had initiated extradition proceedings against Neville and had issued fugitive warrants against him. Neville was transferred to the custody of the sheriff of Vigo County, Indiana, and arraigned on the warrants. He refused to waive extradition. He was granted bail on the condition that he remain in the State of Indiana.
 
 
 5
 Although habeas corpus is generally a post-conviction remedy, the federal courts in certain instances have jurisdiction under 28 U.S.C. § 2241(c)(3) (1976)[4] to grant writs of habeas corpus prior to trial to individuals in state custody. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Despite the existence of jurisdiction, however, federal courts are reluctant to grant pre-trial habeas relief. In the interests of comity between federal and state courts, the doctrine of exhaustion of state remedies has developed. It applies to pre-trial, as well as post-trial, habeas corpus petitions. Braden v. 30th Judicial Circuit Court of Kentucky, supra at 489-92, 93 S.Ct. 1123. See United States ex rel. Parish v. Elrod, 589 F.2d 327, 329 (7th Cir. 1979); Moore v. DeYoung, 515 F.2d 437, 442 (3d Cir. 1975).
 
 
 6
 In United States ex rel. Parish v. Elrod, supra, this court stated that only in "special circumstances" will a habeas petitioner be able to show that he has exhausted his state remedies prior to trial. 589 F.2d at 329. The court further stated:
 
 
 7
 "(T)he possibility that resort in the future to the Illinois appellate courts may be futile, does not compel us to disrupt a pending state criminal prosecution at which the petitioner may yet be acquitted."
 
 
 8
 Id. (citations omitted).
 
 
 9
 Neville argues that the fact that the Illinois Supreme Court has ruled against him on the merits of his claim constitutes "special circumstances." Thus, he contends that he has satisfied the exhaustion requirement and that the federal court should in this case "adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. at 489, 93 S.Ct. at 1127.
 
 
 10
 It is true that here, as in Braden, the petitioner has presented his claim to the state courts. Moreover, he has received a ruling on the merits from the Illinois Supreme Court. That holding is, without doubt, the law of the case, and Neville cannot realistically anticipate a different result on this issue at trial or on direct appeal. Nonetheless, we do not believe that on this record the district court was wrong to decline to exercise federal habeas corpus jurisdiction. We believe that this case differs from Braden in a very significant respect: the petitioner there sought to compel a trial in state court, not to avoid one. The Braden court stressed the significance of this circumstance:
 
 
 11
 "(P)etitioner made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes. He comes to federal court, not in an effort to forestall a state prosecution, but to enforce the Commonwealth's obligation to provide him with a state court forum.
 
 
 12
 "We emphasize that nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court."
 
 
 13
 410 U.S. at 491, 493, 93 S.Ct. at 1128, 1129.
 
 
 14
 In light of the fact that Neville does seek to derail a pending state criminal proceeding, and that he may be acquitted at trial,[5] we believe the district court was correct in denying the petition for a writ of habeas corpus at this time. We note that this decision does not bar federal consideration of Neville's claim. Rather, it merely delays such consideration until "a time when federal jurisdiction will not seriously disrupt state judicial processes." United States ex rel. Parish v. Elrod, supra at 329.
 
 
 15
 Accordingly, we will affirm the judgment of the district court.
 
 
 16
 CUDAHY, Circuit Judge, dissenting.
 
 
 17
 I agree that federal courts should be "reluctant" to grant pre-trial habeas relief. That reluctance should not reach the point, however, where any claim to such relief is effectively extinguished.[1] The latter result flows ineluctably from the majority's analysis in this case.
 
 
 18
 The majority finds that the Illinois Supreme Court has ruled on the merits of the petitioner's case and "without doubt" that court's ruling is "the law of the case." Petitioner "cannot realistically anticipate a different result on (the issue raised in his habeas petition either) at trial or on direct appeal." If petitioner is tried by the Illinois courts, therefore, the outcome with respect to the issue raised in this petition is a foregone conclusion. And, as the majority concedes, the only event which could relieve the federal courts of the duty of eventually considering his claim would be his acquittal at his state trial. If standing trial in state court to determine innocence or guilt is an indispensable element of exhaustion of state remedies, almost by definition the prospect of Pre-trial habeas has been entirely foreclosed. I do not read the controlling cases as requiring such an extreme result. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1972); Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886); United States ex rel. Parish v. Elrod, 589 F.2d 327 (7th Cir. 1979).
 
 
 19
 This case is unique and likely to remain so. No other case involving pre-trial habeas has been cited where the highest court of a state has previously considered Precisely the same issue as applied to the Very same party as is involved in the federal habeas corpus petition and where that court has by a Full opinion definitively and authoritatively resolved the issue.[2] Cf. United States ex rel. Sero v. Preiser, 506 F.2d 1115 (2d Cir. 1974), Cert. denied, 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789. The state of Illinois has had an opportunity not only to address the very issue raised by the instant petition but to render full and final judgment on that issue. The majority apparently concedes that Illinois' disposition of the issue would be clear and binding in any further state criminal proceedings. Therefore, to require, for purposes of "exhaustion," that the criminal trial take place to determine whether a finding of innocence may yet relieve the federal courts of any duty to consider the federal claim is to allow the exhaustion doctrine to swallow up whole any claim for pre-trial habeas corpus.
 
 
 20
 Under "ordinary circumstances," obviously, state remedies for addressing a prisoner's claims, other than that of innocence, cannot be said to have been exhausted before trial. See United States ex rel. Parish v. Elrod, supra; Moore v. DeYoung, 515 F.2d 437 (3rd Cir. 1975). But under the "special circumstances" of this case, petitioner's claims, other than his ultimate claim of innocence, have been definitively adjudicated by the highest state court. Comity would not be realistically furthered by requiring trial on the merits when the federal claims which may avoid conviction have already been subjected to the fullest scrutiny and most definitive disposition of the Illinois courts. Comity consists in giving Illinois a maximum opportunity to deal with petitioner's claims before federal intervention. The majority evidently concedes that that opportunity has already been afforded to the very fullest degree. Considerations of comity are unlikely to be different whether petitioner stands merely under indictment or under conviction. In addition, Illinois has already established in this case, by hearing and deciding the application for writ of prohibition with a regular opinion on the merits, the pattern of full appellate court consideration of the Detainers Act[3] question Before trial. Hence, the federal courts in following a similar pattern would merely be taking their lead from the state courts and furthering judicial economy.
 
 
 21
 In Braden, supra, the Supreme Court sought carefully to relate the exhaustion doctrine to its underlying purposes. Thus the Court said:
 
 
 22
 "The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement.' Secretary of State for Home Affairs v. O'Brien, (1923) A.C. 603, 609 (H.L.). It cannot be used as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine and that called it into existence. As applied in our earlier decisions, the doctrine
 
 
 23
 'preserves the role of the state courts in the application and enforcement of federal law. Early federal intervention in state criminal proceedings would tend to remove federal questions from the state courts, isolate those courts from constitutional issues, and thereby remove their understanding of and hospitality to federally protected interests. Second, (the doctrine) preserves orderly administration of state judicial business, preventing the interruption of state adjudication by federal habeas proceedings. It is important that petitioners reach state appellate courts, which can develop and correct errors of state and federal law and most effectively supervise and impose uniformity on trial courts.' Note, Developments in the Law Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1094 (1970)."
 
 
 24
 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127 (1972). (emphasis supplied)
 
 
 25
 It is significant that in the Note thus quoted with approval by the Supreme Court in Braden the author explains the factor of "orderly administration of state judicial business, preventing the interruption of state adjudication" in terms of petitioners' access to state appellate courts (which can effectively supervise trial courts). Here such access has been extraordinarily direct and complete.
 
 
 26
 In addition, since the Illinois Supreme Court has interpreted the pertinent section of the Detainers Act as applied to this petitioner in a full opinion (Neville v. Friedman, supra ) and has relied on the Neville interpretation in the later case of People v. Dye, 69 Ill.2d 298, 13 Ill.Dec. 695, 371 N.E.2d 630 (1977), a federal district court may interpret the statute at this point without removing federal questions from the state courts or isolating such courts from federal issues the concerns expressed in Braden. It would be extraordinarily useful in the instant case for a federal court to promptly consider and construe this interstate detainer compact because this compact attempts to provide a Nationally uniform method of transferring federal prisoners to state courts. Such an objective can be realized only by uniform interpretation of the compact.[4] Obviously, effective uniformity of interpretation will result more expeditiously from recourse to the federal courts now rather than after trial.
 
 
 27
 I do not disagree with the majority that Braden looks with disfavor on the "derailment of a pending state proceeding by an attempt to litigate constitutional defenses Prematurely in federal court."[5] 410 U.S. 493, 93 S.Ct. 1129, 35 L.Ed.2d 450-451 (emphasis supplied). I do strongly suggest that under the instant "special circumstances," consideration of federal statutory claims in federal court is not premature.
 
 
 28
 Further, it is unreasonable, absent any valid question of exhaustion as to his rights under the Interstate Agreement on Detainers Act,[6] to require petitioner to endure the rigors of trial Now merely in the hope that a verdict of innocence will relieve the federal courts of their duty to consider whether Illinois has jurisdiction to conduct the trial.[7]
 
 
 29
 I agree with the majority that the double jeopardy cases are not controlling here. Cf. Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); Moore v. DeYoung, 515 F.2d 437 (3rd Cir. 1975); Tooten v. Shevin, 493 F.2d 173 (5th Cir. 1974), Cert. denied, 421 U.S. 966, 95 S.Ct. 1957, 44 L.Ed.2d 454 (1975). Petitioner is not facing the rigors of a second trial for the same offense. But I see no reason from the point of view of either the state or the petitioner of requiring Any trial until the fully mature federal claims, which go to the heart of state jurisdiction, are resolved. I would reverse and remand to the district court to hear this petition on the merits.
 
 
 
 *
 The Honorable Francis L. Van Dusen, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 The Interstate Agreement on Detainers Act has been adopted by 44 states, the District of Columbia and the United States. It was enacted to coordinate procedures for handling prisoners in one jurisdiction who faced pending criminal charges in another jurisdiction. According to Article I of the Interstate Agreement, the main purposes of the Agreement are to implement the right to a speedy trial and to minimize the interference with the treatment and rehabilitation of prisoners. In order to further these purposes, the Interstate Agreement creates several new statutory rights
 
 
 [2]
 Article IV(e) provides:
 "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."
 
 
 [3]
 Neville v. Friedman, 67 Ill.2d 488, 10 Ill.Dec. 575, 367 N.E.2d 1341 (1977)
 
 
 [4]
 28 U.S.C. § 2241(c) provides in relevant part:
 "(c) The writ of habeas corpus shall not extend to a prisoner unless
 (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . . ."
 In determining if the "in custody" requirement has been met, the court examines the status of the petitioner at the time the habeas corpus application was filed. Carafas v. LaVallee, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).
 In determining if a violation of the laws of the United States has been alleged, the court here is guided by Echevarria v. Bell, 579 F.2d 1022 (7th Cir. 1978). In Echevarria, a prisoner who had been transferred from federal to state custody and back again without standing trial on the state charges filed a petition for federal habeas corpus relief, alleging his rights under Article IV(e) of the Interstate Agreement on Detainers Act, Ill.Rev.Stat.1975, ch. 38, § 1003-8-9(a), had been violated. This court found that the petitioner had presented a claim that he was in custody in violation of a law of the United States because "(t)he construction of (an interstate) compact sanctioned by Congress . . . presents a federal question." Id. at 1024.
 
 
 [5]
 Neville urges upon the court an analogy between his situation and one involving a claim of double jeopardy. If fully stated, his argument would proceed as follows: (1) he has a right under the Interstate Agreement not to stand trial in Illinois state court; (2) to vindicate that right, there must be a federal pre-trial forum available to test the merits of his claim; (3) if not provided with a pre-trial forum, he will be forced to undergo a trial in order to prove that he has a right not to stand trial. To support his position, Neville relies on Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), in which the Supreme Court held that the pre-trial rejection of a defendant's double jeopardy claim was collateral to and separate from the issue of guilt, and therefore was immediately appealable. The Court remarked that the Double Jeopardy Clause would be undermined significantly if appellate review of the claim were postponed until after conviction
 Neville's reliance on Abney is misplaced, however. As the Third Circuit recognized in Moore v. DeYoung, 515 F.2d 437, 446 n. 11 (1975), there are major differences between claims arising under the Double Jeopardy Clause and those arising under the Interstate Agreement on Detainers Act.
 "One major substantive difference in the nature of the two claims . . . is readily apparent. A double jeopardy claimant has once endured the rigors of a criminal trial. (The petitioner), by contrast, has not yet stood trial on any of the indictments arising out of the alleged criminal assault. Thus, the constitutional and policy considerations, which may entitle a defendant claiming Double jeopardy to have that claim considered in a pre-trial federal habeas petition before state court exhaustion of that issue on the merits do not apply with equal force to (the petitioner's Interstate Agreement on Detainers Act) contention."
 The Fifth Circuit reached a similar result in Tooten v. Shevin, 493 F.2d 173 (1974), Cert. denied, 421 U.S. 966, 95 S.Ct. 1957, 44 L.Ed.2d 454 (1975). There the appellant contended she was entitled to pre-trial federal habeas corpus relief in order to protect her right to be free from unlawful prosecution and the unwarranted rigors of a criminal trial. The court denied her petition, distinguishing between appellant, who "merely assert(ed) a federal defense to a state prosecution," and one who asserted a double jeopardy claim. Id. at 176.
 
 
 [1]
 A federal district court has jurisdiction to entertain a writ of habeas corpus sought by any prisoner "in custody in violation of the Constitution or laws or treaties of the United States" even if the prisoner has not yet been tried. 28 U.S.C. § 2241(c)(3). "Exhaustion (of state remedies) is not a jurisdictional requirement, and does not go to the power of the district court to hear petitions for writ of habeas corpus." Echevarria v. Bell, 579 F.2d 1022, 1025 (7th Cir. 1978). A prisoner held pursuant to a judgment of a state court may seek federal habeas corpus under 28 U.S.C. § 2254
 
 
 [2]
 In Neville v. Friedman, 67 Ill.2d 488, 10 Ill.Dec. 575, 367 N.E.2d 1341 (1977), Cert. denied, 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1132 (1978), the Illinois Supreme Court, in a full opinion addressed to the merits of petitioner's defense, refused to issue a writ of prohibition on his behalf. Neville was not a summary denial of the application for the writ as in Tooten v. Shevin, 493 F.2d 173 (5th Cir. 1974), Cert. denied, 421 U.S. 966, 95 S.Ct. 1957, 44 L.Ed.2d 454 (1975). Further, Neville addressed precisely the instant petitioner and facts, unlike the situation in Echevarria v. Bell, 579 F.2d 1022 (7th Cir. 1978). The Illinois Supreme Court in People v. Dye, 69 Ill.2d 298, 13 Ill.Dec. 695, 371 N.E.2d 630 (1977), followed and relied upon Neville
 
 
 [3]
 Interstate Agreement on Detainers Act, Ill.Rev.Stat. ch. 38, § 1003-8-9. The same provisions as adopted by the United States appear as 18 U.S.C. Appendix, Sec. 1-8
 
 
 [4]
 In United States v. Ricketson, 498 F.2d 367, 373 (7th Cir. 1973) this Court said with respect to the Detainers Act: "Article IV(c) permits continuances beyond the 120-day limit for good cause shown . . . . But there are no exceptions to the requirement that defendant not be returned to state custody untried." Although the transfers at issue in Ricketson were held not to have been governed by the Detainers Act, the language of the case apparently lends support to Neville's contention that a federal court would interpret this provision of the Detainers Act differently than the Illinois Supreme Court and demonstrates the need for an interpretation of the Act by a federal court in the interest of uniformity
 
 
 [5]
 But I do not read Braden as limiting all pre-trial federal habeas to situations where a petitioner seeks to compel rather than to avoid trial. That distinction seems apt only in a right-to-speedy-trial context (which in fact characterized Braden )
 
 
 [6]
 18 U.S.C. Appendix, Sec. 1-8
 
 
 [7]
 It is fairly arguable at least that the facially categorical requirements of Article IV(e) of the Detainers Act are "jurisdictional." (Cf. Dissenting opinion of Mr. Justice Rehnquist in Braden, 410 U.S. 484, 508, 93 S.Ct. 1123, 1136, 35 L.Ed.2d 450, 460.) Thus Article IV(e) of the Act provides:
 "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." 18 U.S.C. Appendix, Sec. 2.