**Larry DAVIS, Petitioner-Appellant,**

v.

**Douglas T. LANSING, Warden, Metropolitan Correctional Center, and Richard J. Koehler, Commissioner of Corrections, City of New York, Respondents–Appellees.**

No. 1427, Docket 88–2271.

United States Court of Appeals, Second Circuit.

Argued June 17, 1988.

Decided June 30, 1988.

---

William M. Kunstler, New York City (Lynne Stewart, New York City, of counsel), for petitioner-appellant.

Peter D. Coddington, Asst. Dist. Atty., Bronx County, Bronx, N.Y. (Paul T. Gentile, Dist. Atty. for Bronx County, Bronx, N.Y., of counsel), for respondents-appellees.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

MESKILL, Circuit Judge:

This is an expedited appeal from a judgment of the United States District Court for the Southern District of New York, Ward, *J.*, dismissing the petition of appellant Larry Davis for a writ of habeas corpus under 28 U.S.C. § 2254 (1982). The district court assumed jurisdiction but concluded that it should not reach the merits of the petition under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). For the reasons that follow, we affirm.

## BACKGROUND

Davis is currently being tried in New York Supreme Court, Bronx County, before Acting Justice Fried, on charges of attempted murder arising out of a shootout with police in November 1986 in which several officers were wounded. Jury selection began on April 18, 1988.

After six jurors had been selected, the prosecution objected to what it characterized as the defense's systematic use of peremptory challenges to exclude whites from the jury. Justice Fried agreed with the prosecution that the defense's use of peremptory challenges was governed by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which holds that a prosecutor may not use peremptory challenges to strike jurors solely because of race. *Id.* at 89, 106 S.Ct. at 1719. He concluded that the prosecution had made a *prima facie* showing that the defense had excluded jurors because of race. *Cf. id.* at 93–94, 106 S.Ct. at 1721–22. After holding an *in camera* hearing to explore the defense's reasons for exercising its peremptory challenges, Justice Fried concluded that several challenges had been exercised solely because of race. He therefore dismissed the six jurors already selected as well as the venire from which they had been chosen, restored to each side the full twenty peremptory challenges provided by New York law, and started jury selection over again.

Davis applied to the Appellate Division for a writ of mandamus and/or prohibition pursuant to Article 78, N.Y.Civ.Prac.L. & R. § 7801 *et seq.* (McKinney 1981 & Supp. 1988). He sought to prevent Justice Fried from applying *Batson* to defense peremptories. The Appellate Division denied the petition on May 13 without hearing oral argument. Davis applied to the New York Court of Appeals to reverse the Appellate Division, but on May 17 Associate Judge Bellacosa refused to sign an order to show cause that would have brought the matter before that court.

Jury selection resumed after Justice Fried denied Davis' request for a stay. Davis then commenced a second Article 78 proceeding seeking an order directing Justice Fried to reseat the six discharged jurors, but the Appellate Division denied this petition on May 24 after oral argument. On May 25, Judge Bellacosa denied Davis' request for an order to show cause.

On May 26, Davis filed the instant habeas petition in the United States District Court for the Southern District of New York. He named as respondents the warden of the Metropolitan Correctional Center,

where he is being held during trial, and the New York City Commissioner of Corrections. Davis' petition sought an order directing his release unless the New York Supreme Court vacated (1) its holding that *Batson* applies to the use of peremptory challenges by defense counsel, and (2) its order discharging the first six jurors selected.

The district court denied the requested relief and dismissed the petition in a decision issued June 1. Judge Ward noted that there were "serious questions" whether Davis had exhausted state remedies by bringing his two Article 78 proceedings. J.App. at 6. He decided to disregard possible exhaustion problems, however, on the authority of *Granberry v. Greer*, 481 U.S. 129, ___–___, 107 S.Ct. 1671, 1673–76, 95 L.Ed.2d 119 (1987). *See also Plunkett v. Johnson*, 828 F.2d 954, 955–56 (2d Cir.1987). Judge Ward also noted that the respondents had "reserved objections to th[e] Court's subject matter jurisdiction over the petition," J.App. at 7 n. 5. Nevertheless, he assumed jurisdiction and proceeded to consider the petition on the merits.

The district court did not reach Davis' *Batson* argument, however. Instead, relying on the pendency of Davis' state criminal prosecution and his failure to show great and immediate irreparable harm, *see Younger*, 401 U.S. at 43–46, 91 S.Ct. at 750, Judge Ward concluded that he should abstain from exercising jurisdiction. *See* J.App. at 7–10.

This expedited appeal followed.

## DISCUSSION

### A. *Jurisdiction*

■ The question of federal jurisdiction, which the district court did not reach, is not free from doubt in this case. Davis' petition is couched in terms of habeas corpus but he essentially seeks from the federal court what he failed to obtain in the state courts—relief in the nature of mandamus or prohibition directed to Justice Fried. The federal courts have no general power

to compel action by state officials, however. *See, e.g., Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n. 5 (10th Cir.1986); *Russell v. Knight*, 488 F.2d 96, 97 (5th Cir.1973) (per curiam); *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir.1970); *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587 (4th Cir.1969) (per curiam); *Clark v. Washington*, 366 F.2d 678, 681–82 (9th Cir.1966). Thus, if Davis had expressly sought relief in the nature of mandamus or prohibition, we would lack jurisdiction.

It is not clear that the result should be different merely because Davis has recast his plea for relief in the form of a habeas petition. The "traditional meaning and purpose of habeas corpus [is] to effect release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 486 n. 7, 93 S.Ct. 1827, 1834 n. 7, 36 L.Ed.2d 439 (1973). Before the federal courts, Davis has at least facially brought his prayer for relief within the ambit of habeas by requesting release from custody *unless* the state court complies with directions to vacate its orders involving the *Batson* analysis. Notwithstanding the form of his request, it is clear that if he prevails, he will obtain only a continuing trial before a differently constituted jury. The fact or duration of his confinement would not be affected. The relief requested in the habeas petition thus differs little in effect from the remedies of mandamus or prohibition sought in the Article 78 proceedings.

In light of our disposition of the abstention issue, it is unnecessary to decide whether the nature of relief sought by Davis undermines the viability of his habeas petition. We do not mean to encourage the use of habeas to circumvent the unavailability of mandamus against state officials. For purposes of this appeal, however, we accept his request for release at face value and proceed to examine the merits. We do not decide whether, in a proper case, the unavailability of requested relief might alone support dismissal of a habeas petition for lack of jurisdiction.[1]

---

1. In dissent, Judge Pierce concludes that we

lack jurisdiction because Davis' petition does

### B. *Exhaustion*

■ An applicant for habeas relief generally must exhaust available state remedies. *See* 28 U.S.C. § 2254(b), (c). Because of the nature of New York's Article 78 proceedings, it is unlikely that Davis' two petitions within the state courts exhausted state remedies.

The relief Davis sought—a writ of mandamus and/or prohibition—is regarded as an extraordinary remedy. In New York, it is settled that an Article 78 action "does not lie to review error claimed to have occurred in a criminal proceeding." *Hennessy v. Gorman*, 58 N.Y.2d 806, 807, 459 N.Y.S.2d 261, 261, 445 N.E.2d 644, 644 (1983). Specifically, writs of prohibition are not available to correct "errors of substantive law or procedure committed within a proceeding which is properly maintainable." *Rush v. Mordue*, 68 N.Y.2d 348, 353, 509 N.Y.S.2d 493, 495–96, 502 N.E.2d 170, 172–73 (1986). Prohibition is appropriate "only when a court exceeds its jurisdiction or authorized power in such a manner as to implicate the legality of the entire proceeding." *Id.* at 353, 509 N.Y.S.2d at 495, 502 N.E.2d at 172. Neither mandamus nor prohibition is available in the absence of a clear legal right. *Id.* at 352, 509 N.Y.S.2d at 495, 502 N.E.2d at 172 (prohibition); *City of Newburgh v. Public Employment Relations Board*, 63 N.Y.2d 793, 795, 481 N.Y.S.2d 327, 328, 471 N.E.2d 140, 141 (1984) (mandamus).

Davis' requests for relief were insufficient to warrant action under Article 78 according to these standards. He did not contend that Justice Fried had acted without jurisdiction. Nor did he assert a clear legal right: even if he turns out to be correct that the Constitution imposes no limits on defense peremptory challenges, any right to unfettered use of peremptories

cannot now be considered clear in view of the Supreme Court's express reservation of that question in *Batson*. *See* 476 U.S. at 89 n. 12, 106 S.Ct. at 1718 n. 12. At bottom, Davis asserted a mere error of law that does not support Article 78 relief. *Cf. Rush*, 68 N.Y.2d at 353, 509 N.Y.S.2d at 496, 502 N.E.2d at 173 ("prohibition will not lie as a means of seeking collateral review of mere trial errors of substantive law or procedure, however egregious").

Against this background, we are inclined to conclude that Davis' claims are unexhausted. The Supreme Court has held in a closely analogous case that prejudgment pursuit of a writ of prohibition does not necessarily exhaust state remedies. *See Pitchess v. Davis*, 421 U.S. 482, 488, 95 S.Ct. 1748, 1752, 44 L.Ed.2d 317 (1975) (per curiam). "[D]enial of an application for an extraordinary writ by state appellate courts [does] not serve to exhaust state remedies where the denial [can]not be fairly taken as an adjudication of the merits of claims presented, and where normal channels for review [are] available." *Id.* (citing *Ex parte Hawk*, 321 U.S. 114, 116, 64 S.Ct. 448, 449, 88 L.Ed. 572 (1944)). Here, Davis' Article 78 proceedings were plainly inappropriate vehicles under New York law for raising his claim of error. Although the Appellate Division denied his requests for relief without opinion, there is no reason to believe that the denials were on the merits. *Cf. Rosenfeld v. Dunham*, 820 F.2d 52, 54 (2d Cir.) (when state urges both procedural and substantive grounds for affirmance and state appellate court affirms without opinion, federal habeas court presumes that affirmance was on procedural ground), *cert. denied*, —— U.S. ——, 108 S.Ct. 463, 98 L.Ed.2d 402 (1987); *Phillips v. Smith*, 717 F.2d 44, 51 (2d Cir.1983) (same), *cert. denied*, 465 U.S. 1027, 104 S.Ct. 1287, 79

not fall into any of the five situations described in 28 U.S.C. § 2241(c). On a more completely developed record, we might well reach the same conclusion. In this case, however, neither the parties nor the district court devoted any attention to the jurisdictional issue. Nor was the question the subject of discussion in the parties' briefs to this Court. The resulting record provides little illumination. We think that Davis makes at least a colorable claim that he is being

held "in violation of the Constitution" within the meaning of section 2241(c)(3). Definitive resolution of this issue would best be accomplished by remand to the district court for further development—or at least further briefing by the parties. In the interests of judicial economy, we think it best to treat the jurisdictional question as we do while holding open the possibility that the dissent's analysis could control the disposition of a case with a better developed record.

L.Ed.2d 689 (1984). Moreover, Davis concedes that if he is convicted, he will be able to raise the *Batson* claim on direct appeal in the state courts. Under these circumstances, it is unlikely that the two Article 78 proceedings exhausted state remedies.

■ We need not decide whether, as Davis contends, *Pitchess* may be distinguished from the instant case. The apparent failure to exhaust is not an absolute bar to consideration of the petition on the merits. The exhaustion requirement is not jurisdictional. *See Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984). It is a doctrine of comity. *See Rose v. Lundy,* 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379 (1982). In some circumstances it may be appropriate to address the merits of a habeas petition in the interests of comity and federalism even if the state fails to press an arguably meritorious non-exhaustion defense. *See Granberry,* 481 U.S. at ————, 107 S.Ct. at 1675–76. *See also Plunkett,* 828 F.2d at 956 (noting that judicial resources may also be preserved). The interests of the federal and state courts, as well as those of petitioner and respondents, are served by reaching the merits "if it is perfectly clear that the applicant does not raise even a colorable federal claim." *Granberry,* 481 U.S. at ———, 107 S.Ct. at 1675. District courts as well as courts of appeals therefore have "discretion to determine what effect to give to a state's waiver of [an] exhaustion defense." *Plunkett,* 828 F.2d at 956.

We agree with the district court that it would be most efficient to disregard non-exhaustion and reach the merits of the dispositive abstention issue. The respondents' willingness to forgo the non-exhaustion defense, albeit not binding on the court, also supports this conclusion. Under the circumstances, resolution of the abstention issue is "perfectly clear." Its immediate disposition serves the interests of comity by allowing the state court to conduct the trial without federal interference.

## C. *Abstention*

■ Interests of federalism and comity stand behind the "fundamental policy against federal interference with state criminal prosecutions." *Younger,* 401 U.S. at 46, 91 S.Ct. at 751. *See also Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Levy v. Lewis,* 635 F.2d 960, 964–65 (2d Cir.1980). Accordingly, "the normal thing to do when federal courts are asked to enjoin pending [state criminal] proceedings ... is not to issue such injunctions." *Younger,* 401 U.S. at 45, 91 S.Ct. at 751. Moreover, equitable principles support denial of relief in such circumstances unless there is a showing of irreparable harm that is both great and immediate. *Id.* at 46, 91 S.Ct. at 751. Finally, interference in pending proceedings is inappropriate " 'unless state law clearly bars the interposition of ... [federal] constitutional claims.' " *Middlesex County Ethics Committee,* 457 U.S. at 432, 102 S.Ct. at 2521 (quoting *Moore v. Sims,* 442 U.S. 415, 426, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979)). "No more is required to invoke *Younger* abstention [than the *opportunity* to present federal claims in the state proceeding]." *Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977). The burden of showing inadequacy of state procedure for this purpose rests with the federal "plaintiff"—here, Davis. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987). *See generally Middlesex County Ethics Committee,* 457 U.S. at 432, 102 S.Ct. at 2521; *University Club v. City of New York,* 842 F.2d 37, 40 (2d Cir.1988).

This is a classic case for abstention. Davis essentially asked a federal court to exert control over his state trial. There is no question that the ongoing prosecution implicates important state interests: *Younger* itself settled the importance of the state's interest in criminal proceedings. Moreover, Davis concedes that he can raise any constitutional claims on direct appeal in the state courts if he is convicted. *Younger* thus unmistakably supports the district court's decision not to exercise jurisdiction.

Despite the apparent aptness of *Younger* abstention, Davis argues that the unique facts of this case rise to the level of " 'extraordinary circumstances,' " *Younger*, 401 U.S. at 45, 91 S.Ct. at 751 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)), sufficient to overcome the factors militating in favor of abstention. We conclude, however, that none of the four contentions offered in support of this argument compels a different outcome.

Davis first argues that he will suffer irreparable harm if his trial proceeds with an improperly constituted jury. The burden of defending a criminal prosecution is, of course, insufficient without more to constitute irreparable harm. *See id.* at 46–47, 91 S.Ct. at 751–52. Davis relies on the possibility of adverse consequences in future prosecutions arising out of the same events at issue here. He contends that if he is convicted in the trial now under way, and if later prosecutions are not stayed pending appeal, his conviction may be admitted into evidence as proof of identity or, if he testifies, to impeach him. To state this argument is to refute it: the harm alleged is too speculative and remote to constitute the "immediate" harm necessary to support interference with a pending state proceeding, *see id.* at 46, 91 S.Ct. at 751.

Second, Davis contends that *Younger* principles are not properly applicable here at all because he does not seek to *enjoin* the prosecution. This contention is nothing more than a semantic distinction: although Davis does not denominate his requested relief an injunction against prosecution, he seeks "discharge" of the prosecution if the requested relief is not forthcoming. Whether mandatory or prohibitory, the relief he seeks is injunctive in all but name. In any event, *Younger* itself speaks of "interference" with state proceedings. *See* 401 U.S. at 43, 46, 91 S.Ct. at 750, 751. *See also Wallace v. Kern*, 520 F.2d 400, 405 (2d Cir.1975) (noting that comity deprives federal courts of power to intervene in state courts' internal procedures), *cert. denied*, 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976). Even if Davis cannot obtain a complete prohibition of the state prosecution, he would have it proceed only under conditions imposed by the federal judiciary. Unless *Younger* otherwise supports such drastic intervention, and it does not, principles of comity oblige the federal court to stay its hand.

Davis' third argument is that this case involves prosecutorial bad faith that outweighs considerations of comity. He contends that departure from the general rule of noninterference is warranted because the prosecution has acted in bad faith in taking its position on the *Batson* question at issue here. As an initial matter, we are skeptical that *any* position on that question could, without more, constitute bad faith when the Supreme Court itself has expressly left the issue open. Furthermore, Davis points to nothing suggesting that the prosecution adopted its position in bad faith or for purposes of harassment in the sense *Younger* contemplates. The *Younger* Court gave the example of enforcement of a statute without " 'any expectation of securing valid convictions' " and solely for the purpose of discouraging the assertion of constitutional rights. 401 U.S. at 48, 91 S.Ct. at 752 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 482, 85 S.Ct. 1116, 1118, 14 L.Ed.2d 22 (1965)). Even if the prosecution here sought some tactical advantage, its motivation does not rise to this level of bad faith.

Finally, Davis contends that this case presents an "unusual situation[ ] calling for federal intervention" despite the lack of bad faith or harassment. *See id.* at 53–54, 91 S.Ct. at 755. This argument is not persuasive. Although the *Younger* Court left open the possibility that undefined "extraordinary circumstances" might support interference with state proceedings, *see id.* at 53, 91 S.Ct. at 755, there must nevertheless be a showing of "the necessary irreparable injury," *id.* Davis urges us to find such an extraordinary circumstance in the possibility that a conviction here may have adverse consequences for his defense of later prosecutions. We have already noted, however, that this possibility is too speculative and remote to constitute immediate

harm. We reject the suggestion that it can be bootstrapped into irreparable harm by calling it an extraordinary circumstance or unusual situation.

## CONCLUSION

For the foregoing reasons, we conclude that abstention is indicated in the present posture of this case. We therefore affirm the dismissal of Davis' habeas petition.

PIERCE, Circuit Judge, dissenting:

I would dismiss this appeal for lack of jurisdiction. Under 28 U.S.C. § 2241(c) (1982), a federal writ of habeas corpus shall not extend to a prisoner unless one of the following conditions is met: (1) the prisoner "is in custody under or by color of the authority of the United States or is committed for trial before some court thereof;" or (2) the prisoner "is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States;" or (3) the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States;" or (4) the prisoner is a citizen and domiciliary of a foreign state, and "is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations;" or (5) "[i]t is necessary to bring him into court to testify or for trial." None of these conditions is satisfied in the present case. Although appellant Davis claims that the state court has deprived him of a right to exercise his peremptory challenges to exclude jurors solely on the basis of race, he does not claim that he is *in custody* in violation of the Constitution or laws of the United States. Since this court lacks the authority to grant the requested relief, I would dismiss the appeal. Accordingly, I respectfully dissent.