# United States Court of Appeals
## For the First Circuit

—————————————

No. 00-1168

```
IN RE: JUSTICES OF THE
SUPERIOR COURT DEPARTMENT
OF THE MASSACHUSETTS TRIAL COURT,

Petitioner.
```

—————————————

ON PETITION FOR EXTRAORDINARY WRIT

—————————————

Before

Torruella, <u>Chief Judge</u>,

Stahl and Lipez, <u>Circuit Judges</u>.

—————————————

Cathryn A. Neaves, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, and Catherine E. Sullivan, Assistant Attorney General, were on brief, for petitioner.
Max D. Stern, with whom Jonathan Shapiro, Patricia Garin, Stern, Shapiro, Weissberg & Garin, Michael Angelini, Bowditch & Dewey, LLP, Sara Rapport, Perkins, Smith & Cohen, LLP, Joseph Monahan and Monahan & Padellaro were on brief, for respondent.

—————————————

July 3, 2000

—————————————

**TORRUELLA**, **Chief Judge**.    The Commonwealth of Massachusetts, in name of the Justices of the Superior Court of the Massachusetts Trial Court, asks us to exercise our mandamus authority under the All Writs Act, 28 U.S.C. § 1651, to order the district court to decide or otherwise dispose of a pretrial petition for habeas corpus relief which the Commonwealth claims is interfering with state criminal proceedings.  Although this power is used exceedingly sparingly, we determine that this case poses an issue of such importance, and one so elemental to the proper role of the federal judiciary in our constitutional scheme, as to warrant the issuance of an advisory mandamus granting the requested relief.

## I.  Factual Background

James N. Ellis, Jr., Nicholas Ellis, James N. Ellis, Sr., and Leonora Ellis[1] are four former employees of the Worcester, Massachusetts law firm of Ellis & Ellis.  In 1997, they were indicted by a Massachusetts grand jury on numerous counts of insurance fraud and related charges following a lengthy investigation by the Insurance Fraud Bureau of Massachusetts ("IFB").  The presentation to the grand jury, and the ongoing criminal prosecutions, were and are being handled by assistant

---

[1]    In this Court, these four individuals are technically respondents to the writ for extraordinary relief.  In the district court, however, they were petitioners, with respect to the underlying petition for habeas corpus relief.  And in state court, of course, they were defendants in the criminal trial and appellants in the appellate proceedings.  In an effort to avoid confusion, we will endeavor to refer to them as "the defendants," or to make explicit to whom we refer if other terminology is used.

attorneys general in the Insurance Fraud Division of the Massachusetts Attorney General's Office.

In November of 1997, defendant James N. Ellis, Jr., filed a motion to dismiss the indictments or to disqualify prosecuting counsel; the motion was subsequently joined by the other three defendants. Defendants argued that the assistant attorney generals prosecuting their state criminal cases were impermissibly biased, due to the unusual statutory scheme by which the IFB and the Insurance Fraud Division are funded.

As expressly authorized by statute, see Mass. Gen. Laws ch. 427, § 13 (1996), the IFB is a quasi-governmental entity created by two voluntary associations of Massachusetts insurance carriers, the Automobile Insurance Bureau and the Workers' Compensation Rating and Inspection Bureau, for the prevention and investigation of fraudulent insurance transactions. The governing board of the IFB consists of fifteen members, five from each rating bureau and five specified public officials. The costs of administering the IFB are borne equally by the two rating bureaus.

In addition to bearing the costs of administering the IFB, the two rating bureaus are also subject to annual assessments, which are used to partially fund the investigatory and prosecutorial actions of the Insurance Fraud Division of the Attorney General's Office. By statute, the Attorney General is required to dedicate the funds so received to matters referred to him by the IFB, and he must further designate a total of at least

thirteen assistant attorneys general to work full-time on matters referred by the IFB.[2]

Following a nonevidentiary hearing, the judge presiding over the state trial proceedings denied the motion to dismiss the indictments or disqualify counsel.  Construing all facts in the light most favorable to defendants, the court found that the statutory scheme did not violate defendants' constitutional or statutory rights to a disinterested prosecutor.  Upon defendants' request, the trial judge reported his decision to the Massachusetts Appeals Court, and the Supreme Judicial Court granted defendants' application for direct appellate review.

On April 14, 1999, the Supreme Judicial Court affirmed the denial of the motion to dismiss or disqualify, as well as the denial of defendants' request for an evidentiary hearing.  See Commonwealth v. Ellis, 708 N.E.2d 644 (Mass. 1999).  After reviewing the statutory scheme for infirmity on its face or as applied to defendants in particular, the court concluded that defendants were not deprived of any constitutional right, although a majority expressed concern that the closeness of the IFB and the Insurance Fraud Division might be "difficult to justify on policy grounds."  Id. at 654.

On May 4, 1999, defendants filed a joint pretrial habeas corpus petition in the United States District Court for the

---

[2]  This does not mean that the Attorney General is required to investigate or prosecute all matters referred by the IFB, only that these particular funds and prosecutors shall not be allocated to matters initiated by means other than a referral from the IFB.  See Commonwealth v. Ellis, 708 N.E.2d 644, 652-53 (Mass. 1999).

District of Massachusetts.  In the petition, defendants claim that their "custody" on personal recognizance is in violation of the Due Process Clause of the Fourteenth Amendment because their prosecutors are impermissibly "interested" in their cases due to the relationship between the IFB and the Insurance Fraud Division and because they were denied a constitutionally sufficient opportunity to establish such unlawful influence.  The petition specifically requested discovery and an evidentiary hearing, claiming that they had been denied the ability to develop the facts in the state court.  An initial hearing was held by the district court on October 27, 1999, at which the Commonwealth argued that the defendants' claim was not an appropriate subject for pretrial habeas relief.

On December 8, 1999, approximately one month before the first state court trial date, the district court issued an order (1) requiring the Commonwealth to respond to defendants' discovery requests by December 15, 1999 and (2) preliminarily setting an evidentiary hearing date for December 22, 1999, but not addressing the underlying issue of whether the court would accept jurisdiction over the habeas petition.  On December 17, 1999, the court issued a second order, in which it asserted jurisdiction over the petition and rescheduled the evidentiary hearing for December 30, 1999.

On December 16, 1999, the Commonwealth filed a petition for extraordinary relief with this Court, seeking relief from the district court's order scheduling an evidentiary hearing.  This Court ordered defendants to respond, and they did so on

December 20, 1999, on which date they also moved the district court to postpone the hearing. The district court vacated the December evidentiary hearing, thus mooting the Commonwealth's petition, which was subsequently withdrawn.

The district court then set a January 31, 2000 deadline for in camera production of privileged documents requested in discovery by defendants, and rescheduled the evidentiary hearing for April 3, 2000. While preserving its objection to the imposition of discovery in the habeas proceedings, the Commonwealth complied with the January 31, 2000 deadline for in camera production.

Defendants then, without seeking leave of court, noticed the depositions of four board members of the IFB for January 18-19, 2000 and January 24-25, 2000. The first trial of James N. Ellis, Jr. was scheduled to begin (and did begin) on January 14, 2000. The district court denied motions filed by the Commonwealth and by the IFB to quash the depositions, as well as the Commonwealth's motion for reconsideration.

The Commonwealth filed this second petition for extraordinary relief on February 7, 2000, claiming that the pretrial habeas proceedings in federal court are interfering with the criminal proceedings before the Massachusetts trial court. Since the petition was filed, the first trial of James N. Ellis, Jr. resulted in a hung jury and a mistrial after ten weeks; no retrial has yet been scheduled. Nicholas Ellis was scheduled to begin trial on two indictments on June 15, and James Ellis, Jr.

-6-

will undergo a second trial on two separate indictments beginning on July 17. Further trials involving defendants have not yet been scheduled. It appears that the federal court evidentiary hearing scheduled for April 2000 was not held, due to the pendency of this petition for extraordinary relief.

## II.  Law and Application

### 1.  <u>Standard for Advisory Mandamus</u>

The Commonwealth's petition seeks a writ of prohibition[3] under the All Writs Act, 28 U.S.C. § 1651, prohibiting the district court from asserting jurisdiction over defendants' pretrial habeas petition. As the parties have correctly noted, mandamus relief is a "drastic remedy," to be used sparingly and only in unusual circumstances. <u>In re Recticel Foam Corp.</u>, 859 F.2d 1000, 1005 (1st Cir. 1988). Mindful of the extraordinary nature of mandamus relief, we have limited its availability to "those rare cases in which the issuance (or nonissuance) of an order presents a question anent the limits of judicial power, poses some special risk of irreparable harm to the appellant, and is palpably erroneous." <u>United States</u> v. <u>Horn</u>, 29 F.3d 754, 769 (1st Cir. 1994). However, in certain rare cases, we will exercise our mandamus power even when this exacting standard is not met. <u>See</u>, <u>e.g.</u>, <u>id.</u> We refer

---

[3]  As our prior cases have recognized, the distinct writs of prohibition and mandamus are often discussed interchangeably. <u>See</u> <u>United States</u> v. <u>Horn</u>, 29 F.3d 754, 769 n.18 (1st Cir. 1994). The two writs derive from the same statutory basis and incorporate the same standards, so we will continue the practice of referring to them interchangeably. <u>See</u> <u>id.</u>

to such exercise of authority under the All Writs Act as advisory mandamus.  See id.[4]

Advisory mandamus has its roots in the Supreme Court's reference to mandamus review of "basic, undecided question[s]." Schlagenhauf v. Holer, 379 U.S 104, 110 (1964); see Horn, 29 F.3d at 769; see also 16 Wright et al., supra, § 3934.  It is appropriately invoked when the action or inaction of the district court presents an issue of great importance and novelty, and one the resolution of which will likely aid other jurists, parties, and lawyers.  See Horn, 29 F.3d at 769-70 (citing In re Justices of the Supreme Court of Puerto Rico, 695 F.2d 17, 25 (1st Cir. 1982), and In re Bushkin Assocs., Inc., 864 F.2d 241, 247 (1st Cir. 1989)).

In United States v. Horn, 29 F.3d 754, 770 (1st Cir. 1994), we found the case before us to be a "prime candidate for advisory mandamus."  We noted, inter alia, that the issue presented had never before been squarely decided and bore importantly on the relationship between the Judicial and Executive Branches of government.  See id.  In particular, we found the argument for mandamus in that case to be "especially compelling because [the case] is important in the right way.  It poses an elemental question of judicial authority -- invoking precisely the sort of

---

[4]  As in previous cases, we hasten to distinguish between supervisory mandamus and advisory mandamus.  Supervisory mandamus is used to correct an established, but significantly improper, trial court practice.  Advisory mandamus, in contrast, is appropriate for issues of particular importance and novelty, such as that raised in this case.  See Horn, 29 F.3d at 769 n.19; 16 Charles A. Wright et al., Federal Practice and Procedure § 3934.1, at 573 & n.5 (1996).

-8-

'Article III-type jurisdictional considerations' that traditionally have triggered mandamus review."  Id.

## 2.  **Advisory Mandamus Is Appropriate in this Case**

Like the issue presented in Horn, the issue raised by the Commonwealth's petition is a prime candidate for advisory mandamus. Not only is the availability of pretrial federal habeas relief for "disinterested prosecutor" claims an issue of first impression, but the greater issues of federalism underlying this case implicate the concerns with judicial overextension of jurisdiction that the mandamus writ has traditionally been used to correct. See id. (and cases cited therein).

### a.  **Federal Policy Against Interference with State Court Proceedings**

The federal courts have long recognized the "fundamental policy against federal interference with state criminal proceedings."  Younger v. Harris, 401 U.S. 37, 46 (1971).  This policy is rooted firmly in the basic federal structure of our government.  Two fundamental concepts underlie our constitutional system of government; one is the precept of "separation of powers" and the other is the doctrine of federalism.  The latter concept, which is most acutely at issue in this case, reflects the Founders' determination that the best governance would result if sovereignty, rather than being collected entirely within the new government, were split between the new national government and the various state governments, as was expressed somewhat "after the fact" in the Tenth Amendment to the Constitution.  See id. at 44.

-9-

As early as 1793, Congress manifested its understanding and intention that the state courts be allowed to conduct state proceedings free from interference by the federal courts, when it prohibited the federal courts from issuing injunctions to stay proceedings in state court. See 1 Stat. 335, ch. 22, § 5 (current version at 28 U.S.C. § 2283); Younger, 401 U.S. at 43. This congressional policy, subject to only a few exceptions, has remained essentially unaltered to this day, see 28 U.S.C. § 2283; Younger, 401 U.S. at 43, and is reflected in the federal courts' own policies, including most notably the abstention doctrine developed in Younger v. Harris, 401 U.S. 37 (1971), and its progeny, see, e.g., Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).

As the Supreme Court has recognized, the policy against federal interference with state judicial proceedings is premised on

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our national Government and its courts. . . . What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

Younger, 401 U.S. at 44. It is this fundamental consideration that has led the federal courts to abstain from interfering with state court proceedings even where defendants claim violations of important federal rights. See, e.g., Younger, 401 U.S. at 53 (First Amendment claims); Cruz v. Melecio, 204 F.3d 14 (1st Cir. 2000) (freedom of speech and association, right to vote, and equal protection claims); Casa Marie, Inc. v. Superior Court, 988 F.2d 252 (1st Cir. 1993) (fair housing claim under Civil Rights Act of 1968); Bettencourt v. Bd. of Registration in Medicine, 904 F.2d 772 (1st Cir. 1990) (due process and equal protection claims); Davis v. Lansing, 851 F.2d 72, 77 (2d Cir. 1988) (Batson claim of race-based peremptory challenges).

### b. Applicability of Abstention Principles to Habeas Cases Generally

Defendants argue that the abstention doctrine and its underlying principles do not apply to this case, emphasizing that they are not seeking an injunction or other equitable relief against the state proceedings (such as was involved in Younger), but rather are pursuing a habeas remedy provided for and governed by statute. We find this position unavailing primarily for two reasons.

First, although we appreciate the difference between a request for equitable relief and a request for statutory relief generally, the practical difference between the relief requested in defendants' habeas petition and an ordinary injunction is minimal. Defendants' petition for writ of habeas corpus specifically asks

-11-

the district court to "grant the writ and discharge petitioners from custody." Pet. for Writ of Habeas Corpus, Commonwealth v. Ellis, Case No. 99-CV-10915-NG (D. Mass.), at 9. Such discharge, of course, would be tantamount to an injunction requiring the defendants' release and prohibiting the state from proceeding with the current prosecution. Whatever distinctions might exist between the two remedies, the difference in this case is essentially "semantic." Davis v. Lansing, 851 F.2d 72, 76 (2d Cir. 1988) (affirming dismissal of pretrial habeas petition on abstention grounds).

Second, even accepting the distinction between equitable relief and statutory remedies, Younger speaks of the policy against federal interference with state court proceedings, a reference which we do not read as limited exclusively to equitable relief. See Younger, 401 U.S. at 43; see also Davis, 851 F.2d at 76 (affirming dismissal of habeas petition on abstention grounds); Neville, 611 F.2d at 676 (same). Furthermore, although defendants quote language from a Supreme Court decision referring to the "statutes, rules, precedents, and practices that control the [habeas corpus] writ's exercise," Lonchar v. Thomas, 517 U.S. 314, 323 (1996), and suggest that the body of law surrounding the writ of habeas corpus is self-contained and exclusive of other considerations, there is nothing in the Lonchar decision (or any other case that we are aware of) that purports to render inapplicable one of the fundamental characteristics of our governmental structure -- federalism and its mandate that the

-12-

federal government, including the Judiciary, avoid undue interference with state matters.

### c. <u>Abstention Principles in Pretrial Habeas Context</u>

The applicability of comity and abstention principles to habeas proceedings is amply demonstrated by the courts' treatment of habeas petitions brought prior to conviction in the state proceedings. With only two exceptions to date,[5] the federal courts have routinely rejected petitions for pretrial habeas relief raising any variety of claims and issues. <u>See</u>, <u>e.g.</u>, <u>Carden</u> v. <u>Montana</u>, 626 F.2d 82, 83-85 (9th Cir. 1980) (recognizing general rule prohibiting pretrial habeas relief as "a logical implication of the abstention doctrine announced in <u>Younger</u> v. <u>Harris</u>"); <u>Neville</u> v. <u>Cavanagh</u>, 611 F.2d 673 (7th Cir. 1979) (affirming denial of pretrial habeas petition even though defendant had exhausted state court remedies, because of abstention considerations); <u>see also</u> <u>Braden</u> v. <u>30th Judicial Circuit of Kentucky</u>, 410 U.S. 484, 493 (1973) ("We emphasize that nothing we have said would permit the

---

[5] Notwithstanding the general rule against pretrial habeas petitions, we will "in appropriate circumstances entertain a claim that permitting a nascent (but as yet incomplete) state court prosecution to go forward would violate the Double Jeopardy Clause." <u>Allen</u> v. <u>Attorney General of Maine</u>, 80 F.3d 569, 572 (1st Cir. 1996). <u>But see</u> <u>Doe</u> v. <u>Donovan</u>, 747 F.2d 42, 44 (1st Cir. 1984) (double jeopardy claim failed to justify exception to <u>Younger</u> abstention doctrine). Pretrial habeas petitions claiming violation of the defendant's right to a speedy trial have also been permitted when the requested relief is an immediate trial, <u>see</u> <u>Braden</u> v. <u>30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484 (1973), although when the petitioner seeks dismissal of the charges against him his habeas action must await the conclusion of state proceedings, <u>see</u> <u>Carden</u> v. <u>Montana</u>, 626 F.2d 82, 84-85 (9th Cir. 1980).

derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court."). We particularly note the Seventh Circuit's decision in Neville v. Cavanagh, 611 F.2d 673 (7th Cir. 1979), a case "on all fours" with this one. There, the court affirmed the district court's denial of pretrial habeas relief even though defendant had litigated his claim all the way to, and received a ruling on the merits from, the Illinois Supreme Court. The Seventh Circuit noted that the defendant did indeed "seek to derail a pending state criminal proceeding, and that he may be acquitted at trial." Id. at 676. The Court therefore concluded that federal adjudication of the defendant's claim was correctly postponed "until 'a time when federal jurisdiction will not seriously disrupt state judicial processes.'" Id. We fully agree with the Seventh Circuit's analysis of the issue, and we reach a like conclusion.

### d. **Abstention Is Required in this Case**

Given the importance of the federalism concerns at issue in this case, and the degree to which the district court's orders threaten the delicate and important balance between vigorous protection of federal rights and an appropriate respect for the state conduct of state matters,[6] this case is "a classic case for

---

[6] Although we conclude that the district court should not have asserted jurisdiction over defendants' habeas petition at all, our conclusion is bolstered by the court's imposition of discovery and its apparent intention to conduct an evidentiary hearing in the habeas action. The practical burden of such proceedings is not insignificant, and the inquiry by a federal court into the prosecutorial decisions of a state attorney general poses "separation of powers" issues in addition to federalism issues.

-14-

abstention." Davis, 851 F.2d at 76. Just as in the Neville case, the fact that defendants have in a real sense exhausted their state court remedies[7] does not alleviate the damage caused by federal intervention at this early stage of state court proceedings, for at least two reasons. First, the existence of concurrent federal proceedings may, in any number of practical ways, interfere with the state court's administration of the state prosecutions of these defendants. Second, and perhaps more important, to permit pretrial habeas relief in this case could dangerously distort the incentives acting upon state courts in their adjudication of claims such as defendants' "disinterested prosecutor" claim. Ordinarily, state trial judges have a number of incentives to favor immediate appeal of their determinations of constitutional challenges to the propriety of proceedings, such as defendants' claim here. Allowing immediate appeal, in appropriate cases, protects the rights of individual defendants and also promotes the efficient administration of justice. However, if immediate appeal through state court channels were to then lead to intrusive contemporaneous federal habeas proceedings, state courts would face a very real disincentive to the certification of such decisions for immediate appeal. This result would benefit no one, and would have negative consequences for both courts and criminal defendants.

---

[7] As the Seventh Circuit noted, the decision of the highest state court "is, without doubt, the law of the case, and [defendant] cannot realistically anticipate a different result on this issue at trial or on direct appeal." Neville, 611 F.2d at 676.

In light of the foregoing, the need for federal abstention in this case is "'perfectly clear.'" <u>Davis</u>, 851 F.2d at 76. With the notable exceptions of cases involving double jeopardy and certain speedy trial claims, federal habeas relief, as a general rule, is not available to defendants seeking pretrial review of constitutional challenges to state criminal proceedings, and this case does not present the kind of "special circumstances" which might require a different result. <u>Braden</u>, 410 U.S. at 489. To the contrary, the weighty federalism concerns implicated by the petition for writ of habeas corpus and by the district court's assertion of jurisdiction make pretrial federal adjudication of defendants' claim inappropriate.[8] Defendants are not entitled to consideration of their federal habeas claims "until 'a time when federal jurisdiction will not seriously disrupt state judicial processes.'" <u>Neville</u>, 611 F.2d at 676.

---

[8] Although we are not greatly impressed by the Commonwealth's allegations of harm to the Attorney General's Office in this case, <u>see</u>, <u>e.g.</u>, <u>In re Justices of the Supreme Court of Puerto Rico</u>, 695 F.2d at 20 ("The Supreme Court has made clear in another context that the expense of litigation ordinarily does not constitute irreparable injury, and this court has specifically rejected the general burdensomeness of litigation as a basis for assuming mandamus jurisdiction.") (citing <u>Renegotiation Bd.</u> v. <u>Bannercraft Co.</u>, 415 U.S. 1, 24 (1974), and <u>In re Continental Investment Corp.</u>, 637 F.2d 1, 5-6 (1st Cir. 1980)), the structural injuries to our federal system threatened by the district court's order are sufficient to satisfy any harm requirement that may apply to advisory mandamus cases, <u>see In re Justices of the Supreme Court of Puerto Rico</u>, 695 F.2d at 20 (noting that, even in advisory mandamus cases, petitioners must demonstrate "something about the circumstances here that would make ordinary appeal inadequate to protect their interests.").

**III. Conclusion**

For the reasons stated, the Commonwealth's petition is granted, and a writ of advisory mandamus will issue forthwith instructing the district court to dismiss the defendants' petition for writ of habeas corpus without prejudice to refiling after trial if any defendant is convicted and sentenced in the state proceedings.

**Petition granted. Costs to the Commonwealth of Massachusetts.**