**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DOUGLAS RAY WINN,

     Petitioner - Appellant,

v.

MAX COOK, Creek County District
Attorney,

     Respondent - Appellee,

and

DOUGLAS W. GOLDEN, Creek County
District Judge,

     Respondent.

No. 19-5013

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:18-CV-00382-JED-JFJ)**
_____

Submitted on the briefs:[*]

Robert D. Gifford, II, Gifford Law, P.L.L.C., Oklahoma City, Oklahoma for Petitioner-
Appellant.

_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. _See_
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted
without oral argument.

_____

**HARTZ**, Circuit Judge.

_____

Applicant Douglas Ray Winn seeks a certificate of appealability (COA) to appeal the denial by the United States District Court for the Northern District of Oklahoma of his application for relief under 28 U.S.C. § 2241. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring COA for state prisoner to appeal denial of relief under § 2241); *Montez v. McKinna*, 208 F.3d 862, 866–69 (10th Cir. 2000). Applicant signed a waiver of his right to a jury trial during his state criminal proceeding. But he then claimed the waiver was invalid, and he filed his § 2241 application asking the district court to order the state court to conduct a jury trial. Concluding that the waiver was valid, the district court denied relief. We deny a COA and dismiss the appeal. We rely, however, on the ground that *Younger v. Harris*, 401 U.S. 37 (1971), precludes federal-court intervention.

## I. BACKGROUND

Applicant was charged in Oklahoma state court with domestic abuse (assault and battery) and related offenses. At a pretrial hearing he signed a waiver of his right to a jury trial so that he could qualify for a state mental-health court program. Because he did not complete the program, his case was put back on the trial docket. He then filed a motion in the state trial court for reinstatement of a jury trial, stating his waiver was not knowing, willing, or voluntary. There was no transcript of the pretrial hearing, so the court held an evidentiary hearing. Applicant testified that he had believed he was signing paperwork to enter the mental-health program, rather than signing a waiver, because he

2

did not read the paperwork. He further claimed he did not recall either his attorney or the judge advising him about the waiver. Applicant's then-attorney testified that although he could not remember specifically discussing the waiver with Applicant, his standard practice is to advise defendants of the rights they are waiving and the permanence of such a waiver. The court determined that the waiver was knowing and voluntary and denied Applicant's motion.

Applicant filed a petition for emergency relief with the Oklahoma Court of Criminal Appeals (OCCA) seeking either a writ of prohibition or writ of mandamus. But the OCCA ruled that Applicant could not establish that the lower court's denial of his jury-trial motion was "unauthorized by law," as required for a writ of prohibition, nor could he show that he had a "clear legal right to the relief sought," as required for a writ of mandamus. Aplt. App. at 139–41 (Okla. Crim. App., Order Den. Pet. (June 29, 2018) at 2–3).

Applicant then sought federal-court relief under § 2241, requesting an order requiring the state court to provide him a jury trial. The State responded that Applicant had validly waived his right to a jury trial, and the district court agreed. The court also held (1) that Applicant had exhausted his available state remedies by raising his invalid-waiver claim in the state trial court and then seeking emergency relief from the OCCA on the same ground, and (2) that it was not required to abstain from exercising jurisdiction under *Younger*. Because we hold that the district court should have abstained, we need not address any other issues.

3

**II.     STANDARD FOR COA**

Applicant is not entitled to a COA if no reasonable jurist would find it debatable that his application (1) fails to state a valid constitutional claim or (2) is procedurally barred.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  He fails on the procedural prong, because the district court was required to abstain under *Younger*.  We review de novo the district court's ruling regarding abstention.  *See Walck v. Edmonson*, 472 F.3d 1227, 1232 (10th Cir. 2007).

**III.     YOUNGER ABSTENTION**

**A.     The General Rule**

Under the *Younger* abstention doctrine, federal courts are to abstain from exercising jurisdiction to interfere with state proceedings when the following three requirements are met:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006).  All three requirements are satisfied here.  First, the parties do not dispute that there is an ongoing state criminal proceeding.

With regard to the second factor, "unless state law clearly bars the interposition of the federal statutory and constitutional claims," a plaintiff typically has "an adequate opportunity to raise federal claims in state court."  *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (brackets and internal quotation

4

marks omitted).  Applicant offers no reason to think that Oklahoma state courts would not provide an adequate forum to review his claim, nor can we discern one.  Indeed, the state trial court conducted an evidentiary hearing on the claim.  *Younger* requires only the availability of an *adequate* state-court forum, not a favorable result in the state forum. *See Moore v. Sims*, 442 U.S. 415, 430 (1979) (adequate forum existed when state law posed no procedural barriers to raising constitutional claims).  To be sure, proceedings for emergency review by the OCCA provide only a limited opportunity for relief, but an adverse decision does not preclude later plenary review on direct appeal.  *See Kimmel v. Wallace*, 370 P.2d 844, 846 (Okla. Crim. App. 1962) (denying emergency relief because "a plain, clear and adequate remedy at law, by [direct] appeal to [the OCCA]" was available to the petitioner to later obtain review of his due-process claim).  And the fact that state-writ relief may be limited does not change the *Younger* analysis.  *See Davis v. Lansing*, 851 F.2d 72, 73, 76 (2d Cir. 1988) (despite denial of petitions for writs of mandamus and prohibition in state court, *Younger* required abstention because defendant's claims could be raised on direct appeal in state court); *see also Sweeney v. Bartow*, 612 F.3d 571, 573 (7th Cir. 2010) (*Younger* applies even if person seeking injunction has pursued all state remedies to block proceeding).

Finally, the third *Younger* requirement is met.  For the purposes of *Younger*, state criminal proceedings are viewed as "a traditional area of state concern." *Seneca-Cayuga Tribe of Okla v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 713 (10th Cir. 1989); *see Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (injunction against state criminal-enforcement activities "seriously impairs the State's interest in enforcing its criminal

5

laws, and implicates the concerns for federalism which lie at the heart of *Younger*");

*Fisher v. Whetsel*, 142 F. App'x 337, 339 (10th Cir. 2005) ("Oklahoma's important

interest in enforcing its criminal laws through proceedings in its state courts remains

axiomatic.").

### B.     Exceptions/Irreparable Injury

#### 1.     In General

When *Younger*'s three requirements are met, abstention is mandatory unless one

of three exceptions applies:  the prosecution was "(1) commenced in bad faith or to

harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any

other such extraordinary circumstance creating a threat of 'irreparable injury' both great

and immediate." *Phelps v. Hamilton*, 59 F.3d 1058, 1063–64 (10th Cir. 1995).  Because

(1) neither Applicant nor the federal district court has suggested that there was bad faith

or harassment in state court and (2) there has been no challenge to the constitutionality of

any statute, we consider only whether the alleged violation of Applicant's right to a jury

trial constitutes an irreparable injury meriting an exception to *Younger*.

*Younger* said that "irreparable injury" significant enough to permit federal court

interference must pose a "threat to the plaintiff's federally protected rights . . . that cannot

be eliminated by his defense against a single criminal prosecution."  401 U.S. at 46.

"[T]he cost, anxiety, and inconvenience of having to defend against a single criminal

prosecution, could not by themselves be considered 'irreparable' in the special legal

sense of that term." *Id.*   If there is no injury "other than that incidental to every criminal

proceeding brought lawfully and in good faith," *id.* at 47, there is no irreparable injury.

6

In other words, an error by the state court does not create an irreparable injury simply because the defendant must proceed through the tainted trial before obtaining relief— relief that may well entail a second trial. For example, in *Samuels v. Mackell*, 401 U.S. 66 (1971), the defendant sought to enjoin his trial for violating an allegedly unconstitutional state anarchy statute. The Court held that having to endure a state criminal trial was not an immediate irreparable injury warranting federal relief. *Id.* at 67–69; *see Perez v. Ledesma*, 401 U.S. 82, 85 (1971) (declining to find irreparable injury where defendant sought suppression and return of allegedly obscene material to be used in criminal prosecution, as he "was free to present his federal constitutional claims . . . to the Louisiana courts"); *see also Allee v. Medrano*, 416 U.S. 802, 839 (1974) (Burger, C.J., concurring in the result in part and dissenting in part) ("It will be the rare case, indeed, where a single prosecution provides the quantum of harm that will justify interference.").

In accord with this authority, we have consistently refused to find an exception to *Younger* when the injury could ultimately be corrected through the pending state proceeding or on appeal. In *Sweeten v. Sneddon*, 463 F.2d 713, 714–15 (10th Cir. 1972), we considered a claim that a Utah state court was violating a defendant's Sixth Amendment rights by refusing to appoint counsel. The right to counsel is a fundamental trial right recognized by the Sixth Amendment. *See Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993) ("Our decisions have emphasized that the Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial." (internal quotation marks omitted)). Yet we held that the district court erred in enjoining the state proceeding

7

because the defendant "ha[d] an adequate remedy at law in the state trial of this case, an appeal to the state supreme court, and the right to petition the Supreme Court of the United States for review of any federal question." *Sweeten*, 463 F.2d at 715. We also abstained in *Dolack v. Allenbrand*, 548 F.2d 891, 894–95 (10th Cir. 1977), where the defendant asserted his due-process rights were violated by the untimely appointment of counsel. We said that his "hav[ing] to stand trial is not an 'irreparable injury,'" and he would "not lose the eventual opportunity to assert his constitutional rights." *Dolack*, 548 F.2d at 894–95; *see also Tyler v. Russel*, 410 F.2d 490, 492 (10th Cir. 1969) (pre-*Younger* decision refusing to enjoin pending state criminal prosecution despite defendant's claim that prosecution violated Fourth Amendment, noting that "[n]o great and irreparable injury results to him which would not result to any other person charged with the same crime").

Other circuits have similarly interpreted "irreparable injury" under *Younger*. *See Lansing*, 851 F.2d at 73–74, 77 (*Younger* prevented issuance of order directing state court to either release defendant or prevent state judge from disallowing the defendant's peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986); defendant's claim that he would "suffer irreparable harm if his trial proceeds with an improperly constituted jury" was rejected because "burden of defending a criminal prosecution is, of course, insufficient without more to constitute irreparable harm"); *Palmer v. City of Chicago*, 755 F.2d 560, 575–76 (7th Cir. 1985) (*Younger* barred injunction restraining state officials from continuing alleged practice of withholding material exculpatory evidence from defendants facing trial; the constitutional claims could be adequately raised in the

8

ongoing criminal proceedings); *Davis v. Muellar*, 643 F.2d 521, 525 (8th Cir. 1981) (abstaining from determining whether state charges against Indian defendant should be dismissed because defendant was taken into state custody on his reservation without a tribal extradition hearing; requiring defendant to "defend himself in a criminal trial would not justify habeas corpus relief under the 'both great and immediate' irreparable injury test of *Younger*").

It is important to note than in several of these cases the relief granted by a state appeal would likely not terminate the prosecution of the defendant but would result only in a new trial. *See Sweeten*, 463 F.2d at 715 (denial of counsel in first trial); *Lansing*, 851 F.2d at 76 (alleged *Batson* error at first trial); *Palmer*, 755 F.2d at 575–76 (alleged withholding of exculpatory evidence at first trial); *Muellar*, 643 F.2d at 525 (failure to properly extradite Indian from reservation).

So when would a defendant suffer irreparable injury from state trial proceedings if relief could come only after an appeal? The federal courts have recognized two circumstances: (1) when the defendant's trial is being delayed in violation of the constitutional right to a speedy trial, and (2) when the current trial would violate the Double Jeopardy Clause.[1]

---

[1] This is not to say that *Younger's* third exception has not been invoked in other criminal-proceeding contexts. In *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973), the Court said that "the predicate for a *Younger v. Harris* dismissal was lacking . . . [when the state agency that could afford relief] was incompetent by reason of bias to adjudicate the issues." One can read *Gibson* as an example of an inadequate state forum, *see* Erwin Chemerinsky, *Federal Jurisdiction* § 13.5, at 910 (7th ed. 2016), thus failing *Younger's* second requirement. But both the Supreme Court, *see Kugler v. Helfant*, 421 U.S. 117, 125 n. 4 (1975), and a leading treatise, Richard H. Fallon et al., *Hart and Wechsler's The*

## 2. Right to a Speedy Trial

The first circumstance was recognized by the Supreme Court in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 485 (1973), though the Court did not explicitly discuss *Younger*'s requirements or exceptions. The defendant complained that the State had violated his Sixth Amendment speedy-trial right by not bringing him to trial while he was confined in another State. *See id.* at 485–86. The Court upheld the federal district court's order that the State bring him to trial or release him. *See id.* at 486. In doing so, the Court distinguished between two aspects of the right to a speedy trial: it was ordering a state court to conduct a speedy trial, not requiring the state court to dismiss a charge because it had not been tried in a timely fashion. The Court permitted the defendant's effort to seek "enforcement of the [State's] affirmative constitutional obligation to bring [the petitioner] promptly to trial," but was not authorizing an effort to

---

*Federal Courts and the Federal System* 1098–99 (6th ed. 2009), have instead characterized it as falling under the third, catch-all extraordinary-circumstances exception.

Also, the Supreme Court has held that *Younger* does not apply to injunctions sought by a defendant when grant of the injunction "could not prejudice the conduct of the trial on the merits." *Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9 (1975) (challenge to pretrial detention without a judicial hearing). The Ninth Circuit has held that in similar circumstances, abstention is also improper because the defendant faces irreparable injury. *See Page v. King*, 932 F.3d 898, 904 (9th Cir. 2019) (challenge to pretrial detention; because "loss of liberty for the time of pretrial detention is 'irretrievable' regardless of the outcome at trial," defendant's claim "fits squarely within the irreparable harm exception to *Younger*" (internal quotation marks omitted)); *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (*Younger* did not preclude adjudicating pretrial habeas petition alleging defendant was being jailed without a constitutionally adequate bail hearing because "[d]eprivation of physical liberty by detention constitutes irreparable harm").

10

"litigate a federal defense to a criminal charge." *Id.* at 489. It "emphasize[d] that nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court." *Id.* at 493. Because the defendant "made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes" by requesting only that he be brought to trial, granting pretrial relief did "not jeopardize any legitimate interest of federalism." *Id.* at 491–92.

*Braden* did not characterize its holding as an exception to the *Younger* doctrine. It apparently thought that *Younger* was only marginally relevant (receiving merely a *cf.* citation in a string cite on the exhaustion doctrine, *see id.* at 491) because of the absence of a significant federalism interest, *see id.* at 491–92. But lower courts have examined the significance of *Braden* to the *Younger* irreparable-injury exception. *See Dolack*, 548 F.2d at 894 (reading *Braden* as recognizing a "special circumstance[] . . . to take the case out of the *Younger* doctrine"); *Carden v. Montana*, 626 F.2d 82, 84 (9th Cir. 1980) (noting the limited scope of *Braden* and reversing dismissal by district court of pending criminal charge on ground of denial of speedy trial); *Moore v. DeYoung*, 515 F.2d 437, 445–46 (3d Cir. 1975) (district court's permanent injunction against defendant's state criminal proceedings because of alleged speedy-trial violation was "precisely the situation anticipated" by *Braden* that should be prohibited under *Younger*).

So why does a defendant face irreparable injury when he seeks an order requiring that he be brought to trial but not when he seeks dismissal of the charges against him on the ground that he has been denied a speedy trial? It is because in the first situation the violation of the defendant's rights is becoming more severe every day his trial is delayed,

11

so failure to halt the violation causes additional injury to the constitutional right. But the only injury that arises from delaying dismissal of the charges (until state remedies are exhausted) is that the defendant must go through a trial and appeal, which is not the sort of injury that satisfies the *Younger* exception; in particular, the process of proceeding through a trial and appeal does no damage to the right to a speedy trial.

The absence of irreparable injury in the latter circumstance was explained by the Supreme Court in *United States v. MacDonald*, 435 U.S. 850 (1978). There the Court needed to determine whether denial of the defendant's pretrial motion to dismiss on speedy-trial grounds was a final order that could be immediately appealed. *See MacDonald*, 435 U.S. at 850, 857–58. The answer depended on the application of the collateral-order doctrine, which treats certain interlocutory orders as final and appealable. *See id.* at 853–54. One of the doctrine's requirements for finality is that denial of the appeal could cause irreparable damage to an important right. *See id.* at 854–55. *MacDonald* held that an order rejecting a motion to dismiss for denial of the right to a speedy trial did not satisfy that requirement of the collateral-order doctrine (or any other requirement, for that matter). *See id.* at 860–61. "The order sought to be appealed," said the Court, "may not accurately be described, in the sense that the description has been employed, as involving an important right which would be lost, probably irreparably, if review had to await final judgment." *Id.* at 860 (internal quotation marks omitted). It explained:

> [T]he Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial,

12

not the trial itself, that offends against the constitutional guarantee of a speedy trial. If the [accused is denied] his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.

*Id.* at 861. The Ninth Circuit in *Carden*, 626 F.2d at 84**,** similarly determined that "the Speedy Trial Clause, when raised as an affirmative defense, does not embody a right which is necessarily forfeited by delaying review until after trial." The court reversed the district court's grant of habeas relief because the defendants had "not shown how they [would] be irreparably injured by waiting until after trial to assert their speedy trial claim." *Id.*

### 3. Double Jeopardy

This court has recognized a second circumstance in which *Younger* does not require abstention from orders affecting a criminal trial: "where a criminal accused presents a colorable claim that a forthcoming second state trial will constitute a violation of her double jeopardy rights." *Walck*, 472 F.3d at 1234. Requiring a defendant to go to trial in violation of the Double Jeopardy Clause causes injury that cannot be remedied after the trial begins. As we explained:

> "[T]he Double Jeopardy Clause . . . is a guarantee against being twice put to trial for the same offense. The guarantee's protections would be lost if the accused were forced to run the gauntlet a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit."

*Id.* at 1233 (quoting *Abney v. United States*, 431 U.S. 651, 660–62 (1977)) (further brackets, ellipses, and internal quotation marks omitted). "'A requirement that a

13

defendant run the entire gamut of state procedures, including retrial, prior to consideration of his claim in federal court, would require him to sacrifice one of the protections of the Double Jeopardy Clause.'" *Id.* at 1234 (quoting *Justices of Bos. Mun. Court v. Lydon*, 466 U.S. 294, 303 (1984)) (brackets omitted). The Double Jeopardy clause "*itself* contains a *guarantee* that a trial will not occur." *United States v. Wampler*, 624 F.3d 1330, 1336 (10th Cir. 2010). Other circuits have similarly recognized that a viable double-jeopardy claim warrants an exception to *Younger. See, e.g., Gilliam v. Foster*, 61 F.3d 1070, 1082 (4th Cir. 1995); *Davis v. Herring*, 800 F.2d 513, 516 (5th Cir. 1986); *Satter v. Leapley*, 977 F.2d 1259, 1261 (8th Cir. 1992); *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992).

Circuit courts have not recognized any exceptions to *Younger*—outside the context of the speedy-trial and double-jeopardy claims just discussed—when the defendant is seeking relief regarding the trial itself. *See In re Justices of Superior Court Dep't of Mass. Trial Court*, 218 F.3d 11, 19 (1st Cir. 2000) ("With the notable exceptions of cases involving double jeopardy and certain speedy trial claims, federal habeas relief, as a general rule, is not available to defendants seeking pretrial review of constitutional challenges to state criminal proceedings."); *Olsson v. Curran*, 328 F. App'x 334, 335 (7th Cir. 2009) ("Relief for state pretrial detainees through a federal petition for a writ of habeas corpus is generally limited to speedy trial and double jeopardy claims."). *Younger* does not require abstention in the two exceptional circumstances because "federal intervention is necessary to prevent the challenge from becoming moot." *Sweeney*, 612 F.3d at 573.

14

## C.    **Application to this Case**

We now turn to whether abstention was required in this case. Relying on *Braden* and *Walck*, the district court concluded that *Younger* would not preclude the relief sought by Applicant because he "could be irreparably harmed if the state proceeds with a non-jury trial based on [his] allegedly invalid waiver of his right to a jury trial." District Ct. Order at 9. We respectfully disagree. A nonjury trial would not cause Applicant irreparable injury in the sense relevant to *Younger*.

The district court's decision that *Younger* does not bar a federal court from ordering that a defendant's upcoming state trial be held before a jury rather than a judge is (to our knowledge) unprecedented. Our analysis begins with an examination of the constitutional right to a jury trial. The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury." U.S. Const. amend. VI. Thus, before someone is subjected to criminal penalties, he or she has the right to have guilt decided by a jury. But this provision on its face does not prohibit a nonjury trial before such a jury trial any more than it prohibits a preliminary hearing— even a very lengthy one—conducted before a jury trial. The right to a jury trial can be vindicated after an improper nonjury trial by reversing the judge's verdict and ordering a jury trial. *Younger* and its descendants tell us that the burden of having to endure a trial is not—outside the double-jeopardy context—irreparable injury in the *Younger* sense. *See Younger*, 401 U.S. at 46. If the constitutional right can be afforded the defendant later—such as by conducting a jury trial—there is not sufficient ground to intervene. Applicant has not suggested that the state court's denial of his motion for a jury trial was

15

an effort to dissuade him from seeking a jury trial, as opposed to a good-faith ruling on the facts and the law.

Supporting our view is the apparent standard practice of ordering a trial by jury when the defendant has been unconstitutionally denied a jury trial and been subjected to a nonjury trial. *See United States v. Pina*, 844 F.2d 1, 11 (1st Cir. 1988) (setting aside contempt convictions and remanding for jury trial); *United States v. Craner*, 652 F.2d 23, 27 (9th Cir. 1981) ("It accords with the relevant state and federal practice that Craner have the jury trial he seeks"); *cf. United States v. Hamdan*, 552 F.2d 276, 280 (9th Cir. 1977) (holding "appellants are entitled to a jury trial" after determining it was constitutional error to deny jury trial). Implicit in this practice is the recognition that the harm of denial of a jury at the first trial can be cured by providing a jury at a later trial.

Applicant can be provided a jury trial if his claim ultimately prevails in state court. We therefore hold that *Younger* denies him access to the federal courts at this stage of the proceedings.

## IV.   CONCLUSION

We **DENY** a COA and **DISMISS** the appeal.