**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

LEVI LOVE,

     Petitioner - Appellant,

v.

DAN SCHNURR, Warden, Hutchinson
Correctional Facility,

     Respondent - Appellee.

No. 23-3150
(D.C. No. 5:22-CV-03276-JWL)
(D. Kan.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

Levi Love, a state inmate proceeding pro se, seeks a Certificate of

Appealability (COA) to appeal the district court's denial of his 28 U.S.C.

§ 2241 petition. For the reasons explained below, we deny Love a COA.

**BACKGROUND**

Love was convicted of first-degree murder and attempted first-degree

murder for shooting two people and killing one. The trial court sentenced Love

to life imprisonment on the murder charge and 68 years' imprisonment on the

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

attempted murder charge, with those sentences running concurrently. At sentencing, the trial court noted that Love would have to serve 25 years before he was eligible for parole on his life sentence. The Kansas Supreme Court affirmed his convictions on direct review. *State v. Love*, 986 P.2d 358, 365 (Kan. 1999).

Love then petitioned for post-conviction relief in Kansas state court, raising claims for ineffective assistance of counsel and claiming that newly discovered evidence warranted a new trial. After the Kansas trial court denied his petition and the Kansas Court of Appeals affirmed, Love petitioned the federal district court for the same relief under 28 U.S.C. § 2254. The district court denied his petition, and we denied a COA. *Love v. Roberts*, 259 F. App'x 58, 59 (10th Cir. 2007) (unpublished).

Over a decade later, Love filed another petition for post-conviction relief in Kansas state court. Love petitioned for relief because, according to him, the Kansas Department of Corrections (DOC) was illegally forcing him to serve his 68-year sentence. More specifically, Love argued that his life-imprisonment sentence should control when he is eligible for parole because it is longer than his sentence for 68 years. Because Kansas allows some prisoners serving life sentences to be eligible for parole after twenty-five years, Love asserted that the DOC was illegally denying him eligibility for parole by listing his 68-year sentence as the sentence that "controlled [his] prison term and postrelese [sic] supervision." R. 178. Thus, Love maintains that he should not have to serve his

2

68-year sentence. The trial court rejected his petition, and the Kansas Court of Appeals affirmed. *Love v. Schnurr* (*State Appeal*), 481 P.3d 193, 2021 WL 745418, at *5 (Kan. Ct. App. 2021) (unpublished table decision). The Kansas Court of Appeals ruled that Love's petition was procedurally barred because Love had exhausted his administrative remedies too late. *Id.* at *4. To exhaust his administrative remedies, Love needed to file a grievance with the warden "within 15 days from the date of the discovery of the event giving rise to the grievance." Kan. Admin. Regs. § 44-15-101b; *see id.* § 44-15-102(b). And "[n]o grievance, regardless of time of discovery, shall be filed later than one year after the event." *Id.* § 44-15-101b. Had he exhausted his administrative remedies by filing a timely grievance, Love would then have had 30 days to file a habeas petition. Kan. Stat. Ann. § 60-1501(b). The Kansas Court of Appeals found that Love first learned of the allegedly illegal change to his sentence in 2014 but waited to file a grievance until July 2018. *State Appeal*, 2021 WL 745418, at *4. So the court dismissed Love's petition because his untimely grievance served as a jurisdictional bar to judicial review. *Id.*

The court also rejected the merits of Love's argument by ruling that parole "is entirely discretionary . . . and might never be granted." *Id.* at *2 (citing Kan. Stat. Ann. § 21-6821). The court explained that "even if Love was paroled on his life sentence, he would not be released [from prison] until he has served a total of 816 months (68 years) on his other concurrent sentence." *Id.*

3

Thus, the court noted, whatever sentence the DOC listed as "Love's controlling sentence appears, on its face, to be of academic interest only." *Id.*

Given that ruling, Love brought another petition in federal court, this time under 28 U.S.C. § 2241. In this petition, Love challenged his parole-eligibility status, cabining his arguments to four legal theories: (1) deprivation of a "[p]rotected liberty interest . . . without due process," (2) "[v]iolation of the Double Jeopardy Clause and § 10 of the Kansas Bill of Rights," (3) violation of Kansas procedural statutes for his procedural default in state court, and (4) fraud and libel against the DOC for denying him parole. R. 12–13. The district court denied Love's petition, finding it procedurally barred and rejecting it on the merits. *Love v. Schnurr* (*Court Order*), No. 22-3276, 2023 WL 4295368, at *5–7 (D. Kan. June 30, 2023). Love now seeks a COA to challenge the district court's denial of his § 2241 petition.

## STANDARD OF REVIEW

Love must obtain a COA before we can address the merits of his habeas petition, as it is a jurisdictional prerequisite to our review. *See Montez v. McKinna*, 208 F.3d 862, 867–69 (10th Cir. 2000). We deny an applicant's COA "if no reasonable jurist would find it debatable that his application (1) fails to state a valid constitutional claim or (2) is procedurally barred." *Winn v. Cook*, 945 F.3d 1253, 1257 (10th Cir. 2019).

**DISCUSSION**

We first determine the scope of our review, and then we consider the merits of Love's application.

I.    **Scope of Review**

The district court entered judgment denying Love's § 2241 petition on June 30, 2023, but Love filed his notice of appeal on August 22, 2023—after the 30-day appellate deadline passed.[1] *See* Fed. R. App. P. 4(a)(1)(A) (requiring appellants to file notice of appeal within 30 days of final judgment unless a motion is filed that tolls the deadline). Yet he timely filed two motions in the district court before the deadline passed—a motion under Rule 59(e) on July 7, and a "motion for rehearing" on July 27. R. 4. The district court denied those motions on July 10 and July 28, respectively. We know that the Rule 59(e) motion tolls the appellate deadline. *See* Fed. R. App. P. 4(a)(4)(A)(iv). So the 30-day clock began to run when the motion was denied on July 10, unless the motion for rehearing is likewise tolling: then the clock would have started on July 28. If the motion for rehearing is not tolling, our review is limited to the denial of that motion; but if it is tolling, then we can review the merits of the district court's denial of Love's § 2241 petition. *Cf. Lebahn v. Owens*, 813 F.3d 1300, 1304–05 (10th Cir. 2016).

---

[1] At the bottom of the notice of appeal, Love (or someone) handwrote, "filed 8-2-23; refiled 8-22-23." R. 521. Nothing in the record shows that the notice was indeed originally filed on August 2, 2023. So we take August 22, 2023, as the official filing date for Love's notice of appeal.

No matter what it is titled, a motion tolls the time to file an appeal under Rule 59(e) "if it is served within the specified time period and seeks relief appropriate to Rule 59(e) by questioning the correctness of the underlying judgment." *See Hayes Fam. Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017). Though called a motion for rehearing, Love's motion satisfies both the timing and substance requirements for us to treat it as tolling. For timing, Love filed the motion for rehearing within 28 days after the district court entered judgment—the judgment was entered June 30; the motion for rehearing was filed July 27. For substance, the motion for rehearing "question[s] the correctness of the underlying judgment" by arguing that the DOC illegally changed Love's sentence. *See id.* Given the timing and substance of the motion, we construe Love's motion for rehearing as a tolling motion under Rule 4. And so, we proceed to the merits.

## II.    Merits

As a state prisoner seeking appellate review of the dismissal of his § 2241 petition, Love must first obtain a COA. *See Montez*, 208 F.3d at 867–69. To do so, Love must show that "jurists of reason would find it debatable" (1) "whether the petition states a valid claim of the denial of a constitutional right" and (2) "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In his opening brief, Love argues that the district court erred by denying his habeas petition and declining to hold

6

an evidentiary hearing. He also argues that the district court judge "should have recused himself." Op. Br. at 4. We consider each in turn.

## A.    Denial of Habeas Petition

The district court denied Love's habeas petition on procedural grounds and on the merits. *Court Order*, 2023 WL 4295368, at *4–6. So Love must show that reasonable jurists would debate whether his "petition states a valid claim of the denial of a constitutional right" and whether the district court erred in its procedural ruling. *Slack*, 529 U.S. at 484.

### 1.    Constitutional Claims

In Love's habeas petition, he raises claims based on purported constitutional and state-law violations. But his "claims of state law violations are not cognizable in a federal habeas action." *Montez*, 208 F.3d at 865. So we only address his federal constitutional claims, of which there are two.

Love claims that the DOC violated the Due Process and Double Jeopardy Clauses by changing his sentence and denying him parole eligibility. To support his claims, Love argues that his life-imprisonment sentence should control when he receives parole and that he should be eligible for parole because he has served over 25 years of his life sentence. Thus, Love asserts that the DOC is illegally forcing him to serve his 68-year sentence by declining to grant him parole.

To start, Love has not stated a valid Due Process violation. To show a Due Process violation, Love must show that he was deprived of a protected

liberty interest. *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 569–70 (1972). Because there is "no constitutional or inherent right to receive parole," federal law does not create a liberty interest in parole. *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994). So to succeed, Love must show that Kansas law creates a liberty interest in parole. *See id.* But "as the Kansas Supreme Court and panels of this court have held, the Kansas parole statute does not create a liberty interest as would be required to maintain a due-process claim." *Heath v. Norwood*, 772 F. App'x 706, 708 (10th Cir. 2019) (unpublished) (citing *Gilmore v. Kansas Parole Bd.*, 756 P.3d 410, 415 (Kan. 1988)). Thus, reasonable jurists would not debate whether Love has stated a Due Process claim.

Likewise, Love has not validly claimed a Double Jeopardy Clause violation. The Double Jeopardy Clause protects defendants against three separate constitutional violations: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Anderson v. Mullin*, 327 F.3d 1148, 1153 (10th Cir. 2003) (cleaned up). In one prosecution, Love was convicted of two offenses—murder in the first degree and attempted murder in the first degree. And he was sentenced to one punishment for each offense: life imprisonment for murder and 68 years' imprisonment for attempted murder. Though Love was denied parole eligibility, his sentence has not changed. *See Carroll v. Simmons*, 89 F. App'x 658, 663 (10th Cir. 2004)

("Because the denial of parole does not change the length of a prisoner's sentence, it is not the imposition of more than one punishment for the same offense as prohibited by the double jeopardy clause." (citation omitted)). And even if he were eligible for parole for his life-imprisonment sentence, Love's 68-year sentence is a separate sentence for a separate offense, not a subsequent "punishment[] for the same offense." *Anderson*, 327 F.3d at 1153. Thus, Kansas can force Love to serve his 68-year sentence without offending the Double Jeopardy Clause. As a result, reasonable jurists would not debate whether Love has stated a claim for the denial of a constitutional right.

### 2.    Procedural Default

The district court ruled that Love's claims were procedurally barred because his habeas petition in state court was dismissed on state procedural grounds. *See Court Order*, 2023 WL 4295368, at *4–5. The district court also found that Love had not shown good cause and prejudice to excuse the procedural default. *Id.* at *5. As explained below, reasonable jurists would not debate this conclusion.

"When a state court dismisses a federal claim on the basis of noncompliance with adequate and independent state procedural rules, federal courts ordinarily consider such claims procedurally barred and refuse to consider them." *Banks v. Workman*, 692 F.3d 1133, 1144 (10th Cir. 2012) (citing *Clayton v. Gibson*, 199 F.3d 1162, 1170–71 (10th Cir. 1999)). A state procedural rule is adequate if it is "firmly established and regularly followed."

9

*Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). A state procedural ruling is independent if "it relies on state law, rather than federal law." *Black v. Workman*, 682 F.3d 880, 918 (10th Cir. 2012) (quoting *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008)).

The Kansas Court of Appeals dismissed Love's case because he failed to timely file a grievance. *See State Appeal*, 2021 WL 745418, at *4–5 (citing Kan. Admin. Regs. § 44-15-101b). This state procedural ruling is adequate because the time limits in § 44-15-101b have been firmly established and regularly followed by Kansas courts. *See, e.g.*, *Walling v. Riggin*, 350 P.3d 1138, 2015 WL 3875085, at *4 (Kan. Ct. App. 2015) (unpublished table decision); *Beauclair v. Heimgartner*, 345 P.3d 296, 2015 WL 1514255, at *3–4 (Kan. Ct. App. 2015) (unpublished table decision); *Thomas v. McKune*, 303 P.3d 727, 2013 WL 3455828, at *3 (Kan. Ct. App. 2013) (unpublished table decision). The Kansas Court of Appeals' ruling is also independent because it relied exclusively on state procedural rules and not any federal law. *See State Appeal*, 2021 WL 745418, at *4–5.

A state procedural default nonetheless may be excused if the petitioner can show "cause and prejudice" or a "fundamental miscarriage of justice." *Tyron v. Quick*, 81 F.4th 1110, 1139 (10th Cir. 2023) (citation omitted). To show cause, a petitioner must demonstrate that "something *external* to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule." *Id.* (quoting *Maples v.*

10

*Thomas*, 565 U.S. 266, 280 (2012)). The petitioner then must show "not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022) (cleaned up). To show a fundamental miscarriage of justice, a petitioner must make a credible claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The actual-innocence exception "is a markedly narrow one" that is "implicated in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (cleaned up).

First, Love has not shown cause and prejudice because he has not claimed that "something external" prevented him from complying with § 44-15-101b. *See Tyron*, 81 F.4th at 1139 (emphasis omitted). Instead, he argues that he discovered the allegedly illegal change to his sentence on October 5, 2017, and filed a grievance on July 27, 2018. Because one year had not passed, he argues that his grievance was timely. But even if Love first discovered the alleged change in October 2017, his grievance was still barred by § 44-15-101b. That regulation requires prisoners to file a grievance "within 15 days from the date" of discovery *and* mandates that "[n]o grievance, regardless of time of discovery, shall be filed later than one year after the event." Section 44-15-101b; *see also Van Houten v. Marlett*, 330 F. App'x 161, 163 (10th Cir. 2009) (unpublished) ("Thus, the sentence permitting filing up to 'one year after the

11

event' is an additional limit on the filing time, not an extension."). So if Love discovered the allegedly illegal change on October 5, 2017, then he had 15 days from that date to file a grievance. And even if he did file within 15 days, then his grievance would still be untimely if it was filed more than a year after the DOC allegedly changed his sentence. *See id.* Thus, Love has not shown cause to excuse his default.

Second, Love also has not shown a fundamental miscarriage of justice because he has not made a credible claim for actual innocence. At Love's trial, the state showed that the victim identified Love as the shooter in a pretrial photo lineup. Now, Love argues that the victim lied to the police and falsely identified Love. To support his claim, Love has produced an affidavit from the victim in which the victim testifies that he lied to the police and falsely identified Love. Love has also produced affidavits from other people who have heard the victim say that he falsely identified Love in the lineup. But Love's recanted-identification evidence is not enough. In general, courts disfavor recantations as the basis for actual innocence claims because "recanted testimony is notoriously unreliable, 'easy to find but difficult to confirm or refute: . . . witnesses with personal motives change their stories many times, before and after trial.'" *Case v. Hatch*, 731 F.3d 1015, 1044 (10th Cir. 2013) (citation omitted). We need not speculate about the victim's personal motive for recanting here because he explains it in his affidavit. The victim testifies, "The only reason why I am telling the truth in this affidavit is to get even with

the court for giving my nephew . . . a life sentence after [the state] had used me to convict Levi Love." Suppl. R. 10. The victim also notes that, if Love gets a new trial, the victim will testify for the state—and against Love *again*—but only if the state "give[s] [his] nephew a new trial, or some type of deal." *Id.* Because the victim is leveraging his recantation to help his nephew, Love has not made the "credible" showing necessary to prove actual innocence.[2] *See McQuiggin*, 569 U.S. at 392.

Because Love has failed to show cause and prejudice or a fundamental miscarriage of justice, reasonable jurists would not debate the district court's procedural ruling.

### B.    Denial of Evidentiary Hearing

Love contends that the district court erred by not holding an evidentiary hearing. "A habeas petitioner can obtain an evidentiary hearing in federal court by (1) showing he was diligent in developing the factual basis for his claim in state court; and (2) asserting a factual basis that, if true, would entitle him to habeas relief." *Hanson v. Sherrod*, 797 F.3d 810, 836 (10th Cir. 2015) (cleaned

---

[2] Love also has not identified a constitutional violation that would have resulted in his alleged wrongful conviction. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). As we have repeatedly noted, a claim of actual innocence is not enough: it must be predicated on a constitutional violation for us to grant relief. *See, e.g.*, *Farrar v. Raemisch*, 924 F.3d 1126, 1134 (10th Cir. 2019) ("Actual innocence and false testimony by a private citizen do not entail constitutional violations triggering habeas relief.").

up). As discussed above, Love has stated no claims that would entitle him to habeas relief. Thus, the district court did not err by denying Love an evidentiary hearing.

### C.     Recusal

Love argues that the district court judge should have recused himself because the judge was involved in Love's first habeas petition. During Love's first habeas petition, Love sent "correspondence" to the chief judge for the District of Kansas—the same judge who presided over Love's current § 2241 petition. R. 517. In that correspondence, Love "lodged a complaint about his case." *Id.* The then-chief responded in an order that "a chief judge does not have express or implied authority to take action in litigation which has been assigned to another judge of the court and remains pending before that judicial officer." *Id.* From this, Love argues that the district judge is "very much interested in Mr. Love's" current habeas petition. Op. Br. at 4.

Even if a judge does not have a personal bias in a proceeding, a judge still must recuse himself when "his impartiality might reasonably be questioned." *United States v. Wells*, 873 F.3d 1241, 1250 (10th Cir. 2017) (quoting 28 U.S.C. § 455(a)). This standard mandates recusal when a reasonable person, knowing all the circumstances, "would harbor doubts about the judge's impartiality." *Id.* at 1251 (citation omitted). But "adverse rulings cannot in themselves form the appropriate grounds for disqualification." *Id.* at 1252 (citation omitted).

14

No reasonable person would "harbor doubts" about the district court judge's impartiality here. *See id.* at 1251 (citation omitted). The district court judge's only involvement in Love's prior habeas petition was the judge's entering an order that explained why he lacked authority to address Love's complaints. Because "adverse rulings cannot in themselves form the appropriate grounds for disqualification," the district court judge properly declined to recuse himself from the present petition. *See id.* at 1252 (citation omitted); *id.* at 1251 (noting that judges have "a strong duty to sit" when recusal is not warranted). Thus, the district court did not err.

## CONCLUSION

For all these reasons, we deny Love a COA.

Entered for the Court

Gregory A. Phillips
Circuit Judge